IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

AMBER SCHIPPER,

Plaintiff,

vs.

NEW HORIZON INNOVATIONS, LLC, and WILLIAM HALL,

Defendants.

**8:26CV20**

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' motion to transfer venue to the United States District Court for the District of Nevada. Filing No. 9. For the reasons stated herein, the motion is denied.

## I. BACKGROUND

Plaintiff, Amber Schipper ("Schipper"), has sued Defendants, New Horizon Innovations, LLC, and William Hall ("Defendants"), for breach of contract for allegedly failing to pay her under a business contract. Filing No. 1-2 at 5–7. Plaintiff Schipper is a resident of Dakota Dunes, South Dakota. *Id.* at 4. Defendant New Horizon Innovations, LLC ("New Horizon") is a Nevada limited liability company with its principal place of business in Las Vegas, Nevada. *Id.* Defendant William Hall ("Hall"), Managing Member of New Horizon, is a resident of Nevada. *Id.* at 5.

In December 2024, New Horizon purchased all of Schipper's membership interests in Precise Bioscience, LLC. Filing No. 11-2 at 28. In the closing of the membership acquisition, the parties executed multiple documents, including a Membership Interest Purchase Agreement ("MIPA") (*id.*), an Intellectual Property Assignment Agreement

("IPAA") (*id.* at 56), a Promissory Note (Filing No. 1-2 at 9), and a Guaranty Agreement ("Guaranty") (*id.* at 13), all dated December 29, 2024.

In her Amended Complaint, Schipper alleges breach of contract under the Promissory Note and Guaranty. Filing No. 1-2 at 6–7. Schipper asserts that New Horizon executed the Promissory Note in favor of Schipper, pursuant to which New Horizon would pay Schipper on the thirtieth (30th) day of each calendar month a payment equal to five percent (5%) of Net Sales in the prior calendar month. Filing No. 1-2 at 5, 9. Schipper also asserts that Hall, as Managing Member of New Horizon, executed a Guaranty in his personal capacity in favor of Schipper (guaranteeing New Horizon's obligations on the Promissory Note). Filing No. 1-2 at 5, 13.

Schipper alleges that on August 28, 2025, New Horizon gave notice that it was refusing to make the monthly payment for August 2025. Filing No. 1-2 at 5. According to the Promissory Note, failure to make a payment when due under the Promissory Note is an Event of Default. *Id.*; *id.* at 9–10. Upon the occurrence of an Event of Default, Schipper had an option to declare the entire unpaid balance of the Promissory Note immediately due and payable without further notice or demand to New Horizon. Filing No. 1-2 at 6 and 10. On December 17, 2025, Schipper exercised this option and declared the entire unpaid balance of the Promissory Note immediately due and payable in a letter emailed to Hall and outside counsel for New Horizon. *Id.* at 6.

Relevant to the immediate issue before the Court is the contract language dealing with forum selection. The MIPA, IPAA, Promissory Note, and Guaranty each contain choice of law clauses providing that Nebraska law will govern, and each document

contains a nearly identical forum selection clause. Filing No. 1-2 at 10–11, 14; Filing No. 11-2 at 43, 57. The Promissory Note's forum selection clause states:

> This Note shall be governed by and construed in accordance with the internal laws of the State of Nebraska without giving effect to any choice or conflict of law provision or rule (whether of the State of Nebraska or any other jurisdiction). Any legal suit, action, or proceeding arising out of or based upon this Note or the transactions contemplated hereby may be instituted in the federal courts of the United States of America or the courts of the State of Nebraska in each case located in South Sioux City, Nebraska or Dakota County, Nebraska, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, or proceeding.

Filing No. 1-2 at 10–11. The Guaranty's forum selection clause states:

> This Guaranty shall be governed by and construed in accordance with the internal laws of the State of Nebraska without giving effect to any choice or conflict of law provision or rule (whether of the State of Nebraska or any other jurisdiction). Any legal suit, action, or proceeding arising out of or based upon this Guaranty or the transactions contemplated hereby may be instituted in the federal courts of the United States of America or the courts of the State of Nebraska in each case located in South Sioux City, Nebraska or Dakota County, Nebraska, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, or proceeding.

Filing No. 1-2 at 14. And the MIPA and IPAA forum selection clauses are identical and state:

> Any legal suit, action, or proceeding arising out of or based upon this Agreement or the transactions contemplated hereby may be instituted in the federal courts of the United States of America or the courts of the State of Nebraska in each case located in South Sioux City, Nebraska or Dakota County, Nebraska, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, or proceeding.

Filing No. 11-2 at 43, 57.

Schipper filed an initial Complaint in this case on September 2, 2025, in the District Court of Dakota County, Nebraska. Filing No. 1-2 at 1. On December 18, 2025, Schipper filed an Amended Complaint in the District Court of Dakota County, Nebraska. *Id.* at 4. On January 14, 2026, Defendants removed this action from the District Court of Dakota

County, Nebraska to the United States District Court for the District of Nebraska. Filing No. 1; Filing No. 1-3. This case is now before the Court on Defendants' Motion to Transfer Venue to the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1404(a). Filing No. 9. Schipper filed a response to the motion to transfer venue. Filing No. 14.

## II. LEGAL STANDARDS

### A. Motion to Transfer Under 28 U.S.C. § 1404(a)

28 U.S.C. § 1404(a) provides that a district court may transfer any civil action to any other district or division where it might have been brought, "[f]or the convenience of the parties and witnesses" or "in the interest of justice." 28 U.S.C. § 1404(a). To determine if a case "might have been brought" in the transferee district, the Court considers whether the transferee district will, "(1) have subject-matter jurisdiction over the case, (2) have personal jurisdiction over the parties, and (3) be the proper venue for the transferred action." *Bhd. of Maint. of Way Employes Div./IBT v. Union Pac. R.R. Co.*, 485 F. Supp. 3d 1048 (D. Neb. 2020). Once the Court determines the case might have been brought in the transferee district, the statutory language reveals three general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interest of justice. *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). A district court is not, however, limited to these enumerated factors in assessing a transfer motion. *Id.* "Such determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Id.* There is no exhaustive list of specific factors to consider. *Id.* Section 1404(a) is intended to place

discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). "[C]ourts have determined that a valid and applicable forum selection clause in a contract is 'a significant factor that figures centrally in the district court's calculus.'" *Terra Intern., Inc.*, 119 F.3d at 691 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). In fact, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (alteration in original) (quoting *Stewart Organization, Inc.*, 487 U.S. at 31).

## III. ANALYSIS

Defendants seek to have the case transferred to the United States District Court for the District of Nevada at Las Vegas under 28 U.S.C. § 1404(a). Filing No. 9. They argue that the District of Nevada is a forum where the action "might have been brought," and the convenience of the parties and witnesses and the interest of justice favor a Nevada Forum. Filing No. 10.

### A. Forum Selection Clauses

#### 1. The Forum Selection Clauses are Valid

As an initial matter, the Court must determine whether the forum selection clauses are valid. The Eighth Circuit has made clear that "[f]orum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid." *M.B. Restaurants, Inc. v. CKE Restaurants, Inc.*, 183 F.3d 750, 752 (8th Cir. 1999). "Where . . . the forum selection clause is the fruit of an arm's-length negotiation, the party challenging the clause bears an especially 'heavy burden of proof' to avoid its bargain."

*Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 789 (8th Cir. 2006) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972)). "[O]nly 'some compelling and countervailing reason' will excuse enforcement of a bargained-for forum selection clause." *Id.* (quoting *M/S Bremen*, 407 U.S. at 12).

Defendants argue that the forum selection clause, which is identical across the many agreements referred to by the parties, is invalid because it exists in a contract which was only executed as a result of Schipper's fraud. Filing No. 10 at 11. Defendants allege that Schipper made numerous false representations in the sale of her membership interests, which Defendants relied upon in executing the MIPA. *Id.* at 12. "In other words, the forum selection clause that Schipper relies upon to be in this court was procured through false representations." *Id.*

By contrast, Schipper first argues that the forum selection clauses are presumptively valid because both Defendants expressly consented to the forum selection clause in multiple agreements executed between the parties. Filing No. 14 at 5–6. The clauses "were negotiated as part of an arm's-length transaction, between sophisticated parties, each represented by counsel." *Id.* at 6. Additionally, Defendant's counsel attempted to change the forum selection clauses from Nebraska to Nevada courts, but Schipper rejected this in lieu of the existing language providing for Nebraska as the agreed upon forum. *Id.* at 7. And second, Schipper argues that a forum selection clause is not invalidated by an allegation of fraud pertaining to the contract as a whole.

The Eighth Circuit has held that a "general allegation [that signatories were] induced by fraud to enter into . . . agreements is insufficient to raise an issue that the forum-selection clauses within those agreements may be unenforceable because of

fraud." *Marano Enters. of Kansas v. Z-Teca Restaurants, L.P.*, 254 F.3d 753, 757 (8th Cir. 2001). The Seventh Circuit has stated even more directly that "even if the contracts . . . that contain the [forum selection] clause are fraudulent, it doesn't follow that the clause is." *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 443 (7th Cir. 2012) (citing *Huffington v. T.C. Grp., LLC*, 637 F.3d 18, 23–24 (1st Cir. 2011)).

In this case, Defendants do not allege fraud specific to the forum selection clauses. They only allege that they relied upon Schipper's false representations in executing the MIPA. Even if true, such allegations alone would not render the forum selection clauses invalid. Therefore, Defendants' allegations are insufficient to overcome the court's countervailing interest in enforcing valid forum selection clauses, even where they are contained in otherwise fraudulent contracts. The forum selection clauses are valid.

**2. The Forum Selection Clauses are Permissive, not Mandatory**

Next, the Court must interpret whether the forum selection clauses are mandatory or permissive. The Eighth Circuit Court of Appeals recognizes both mandatory and permissive forum selection clauses. *See Dunne v. Libbra*, 330 F.3d 1062, 1063 (8th Cir. 2003). "Mandatory forum-selection clauses require a case to be brought in an identified venue based on specific language indicating the parties' intent to make jurisdiction exclusive." *High Plains Const., Inc. v. Gay*, 831 F. Supp. 2d 1089, 1102 (S.D. Iowa 2011) (cleaned up). "Permissive forum-selection clauses, on the other hand, constitute nothing more than a consent to jurisdiction and venue in the named forum and do not exclude jurisdiction or venue in any other forum." *Id.* (cleaned up).

To reiterate, the MIPA, IPAA, Promissory Note, and Guaranty each contain a nearly identical forum selection clause, as discussed above, which states:

> Any legal suit, action, or proceeding arising out of or based upon this Agreement or the transactions contemplated hereby *may be instituted* in the federal courts of the United States of America or the courts of the State of Nebraska in each case located in South Sioux City, Nebraska or Dakota County, Nebraska, and each party irrevocably submits to the *exclusive jurisdiction of such courts* in any such suit, action, or proceeding.

Filing No. 11-2 at 43, 57 (emphasis added); Filing No. 1-2 at 10–11, 14.

Defendants argue that the forum selection clause in the MIPA is permissive because the use of the word "may" means the MIPA allows for the initiation of an action in Nebraska, but it does not mandate that any dispute be resolved in state or federal courts located in Nebraska. Filing No. 10 at 10–11. Schipper, on the other hand, argues that the forum selection clause is mandatory because the clause specifies "'exclusive jurisdiction' of 'such courts' meaning 'the federal courts of the United States of America or the courts of the State of Nebraska . . . located in South Sioux City, Nebraska or Dakota County, Nebraska.'" Filing No. 14 at 10. And that the use of the word "may" applies to the choice between the two courts (federal or state courts), making it mandatory. *Id.*

The Eighth Circuit recently clarified in *Boyd v. Deadwood Tobacco Company*, that "the interpretation of a forum selection clause is a question of state law, typically contracted for by the parties." *Boyd v. Deadwood Tobacco Co.*, 178 F.4th 1132, 1147 (8th Cir. 2026). The interpretation of a forum selection clause "includes the meaning of the clause's terms, its mandatory versus permissive character, and its scope." *Id.* (citation omitted). Thus, in determining whether the forum selection clause is mandatory or permissive, the Court will give effect to the choice-of-law provision in the agreements and apply Nebraska law to interpret the forum selection clause.

Applying Nebraska law to construe the contract, the Nebraska Supreme Court also recognizes both mandatory and permissive forum selection clauses. *Polk Cnty.*

*Recreational Ass'n v. Susquehanna Patriot Com. Leasing Co.*, 734 N.W.2d 750 (Neb. 2007). In determining whether a forum selection clause is mandatory or permissive, Nebraska law relies on the plain language of the contract. *Id.* For example, in *Polk County*, the Nebraska Supreme Court reviewed two agreements with forum selection clauses. *Id.* One agreement contained a forum selection clause with "shall" language, and the other contained "consents and submits" language. *Id.* The Nebraska Supreme Court held that:

> The forum selection clause in the Thornridge lease provides that any action concerning the lease *"shall be"* brought in Pennsylvania. We read this forum selection clause to be a mandatory clause requiring that an action with respect to the lease shall be brought only in Pennsylvania. The forum selection clauses in the other seven leases provide only that the parties *consent and submit to the jurisdiction* of Pennsylvania courts. We read these forum selection clauses to be permissive clauses providing that an action may be brought in Pennsylvania, but not requiring that an action be brought only in Pennsylvania and not prohibiting an action from being brought in another state.

*Id.* (emphasis added).

Here, the Court finds that the clause uses both mandatory and permissive language. The first part of the clause states that an action "may be instituted" in the federal courts or the courts of the State of Nebraska in each case located in South Sioux City, Nebraska or Dakota County, Nebraska. The use of the word "may" makes this part of the provision permissive. And then the second part of the clause states that each party submits to the "exclusive jurisdiction of such courts." The use of the language "exclusive" makes this part of the provision mandatory. Because the clause uses both mandatory and permissive language, it is internally inconsistent and ambiguous. "A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at

least two reasonable but conflicting interpretations or meanings." *Bierman v. Benjamin*, 943 N.W.2d 269 (Neb. 2020) (citation omitted).

The Nebraska Supreme Court has determined ambiguous terms in a contract are construed against the party who drafted the contract." *Gard v. Pelican Pub. Co.*, 433 N.W.2d 175 (Neb. 1988) (citing *Schmidt v. J.C. Robinson Seed Co.*, 370 N.W.2d 103 (Neb. 1985)). Further, ambiguous terms "are given a construction which the nondrafting party would be fairly justified in giving the term." *Gard*, 433 N.W.2d at 175 (citing *Bishop Buffets, Inc. v. Westroads, Inc.*, 274 N.W.2d 530 (Neb. 1979). Because the language in the clause is ambiguous, it must be construed against the drafter, which in this case is Schipper. *See* Filing No. 14 at 7. Thus, the Court finds that the language is interpreted as permissive, which is a construction Defendants would be "fairly justified in giving the provision." *Gard*, 433 N.W.2d at 179.

Therefore, the forum selection clause is permissive rather than mandatory. The clause gains the parties consent to the federal and state courts in Nebraska, but it does not require a lawsuit to proceed in Nebraska. *High Plains Const., Inc.*, 831 F. Supp. 2d at 1102.

**B. 1404(a) Factors**

Although venue in Nebraska has been found to be proper, 28 U.S.C. § 1404(a) provides that a district court may transfer any civil action to any other district or division where it "might have been brought," "[f]or the convenience of the parties and witnesses" or "in the interest of justice." 28 U.S.C. § 1404(a). A district court is not, however, limited to these enumerated factors in assessing a transfer motion. *Terra Intern., Inc.*, 119 F.3d at 691. "Such determinations require a case-by-case evaluation of the particular

circumstances at hand and a consideration of all relevant factors." *Id.* There is no exhaustive list of specific factors to consider. *Id.* Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). As an initial matter, the Court need not consider whether the action "might have been brought" in the District of Nevada because § 1404(a) factors clearly counsel against the Court's discretionary transfer.

"[I]n general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010) (quoting *Terra Intern., Inc.*, 119 F.3d at 695). Additionally, "courts have determined that a valid and applicable forum selection clause in a contract is 'a significant factor that figures centrally in the district court's calculus.'" *Terra Intern., Inc.*, 119 F.3d at 691 (quoting *Stewart Organization, Inc.*, 487 U.S. at 29). In fact, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atlantic Marine Const. Co.*, 571 U.S. at 63 (alteration in original) (quoting *Stewart Organization, Inc.*, 487 U.S. at 31). "[T]he party defying the forum-selection clause . . . bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atlantic Marine Const. Co.*, 571 U.S. at 63.

Defendants have not met their "burden of proving that a transfer is warranted." *In re Apple, Inc.*, 602 F.3d at 913. First, the interest of justice does not favor transfer. Defendants first argue that the forum selection clause is permissive and invalid due to the Plaintiff's fraud. Filing No. 10 at 10. However, as already discussed above, the Court

finds that the forum selection clause is valid and permissive. Defendants next argue this Court should ignore the first-filed rule and Schipper's choice of forum in Nebraska should not receive deference because Schipper's initial Complaint and Amended Complaint "were only intended to serve as a place holder, meant to win a 'race to the courthouse.'" Filing No. 10 at 12–13. The first-filed rule is a well-established principle that "the first court in which jurisdiction attaches has priority to consider the case." *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir. 1993) (citation omitted). The first-filed rule "is not intended to be rigid, mechanical, or inflexible . . . but is to be applied in a manner best serving the interests of justice." *Id.* (internal citations omitted). "The prevailing standard is that in the absence of compelling circumstances . . . the first-filed rule should apply." *Id.* (internal citations omitted).

In support of their argument, Defendants allege that Schipper filed an initial Complaint (Filing No. 1-2 at 1) on September 2, 2025, which sat dormant and unprosecuted until she was notified by Defendants' counsel that New Horizon would be filing suit against Schipper. Filing No. 10 at 13. Defendants allege that after being informed, Schipper "raced to the courthouse" and filed the Amended Complaint (Filing No. 1-2 at 4) on December 18, 2025, before New Horizon filed its Nevada Complaint. *Id.*

On the other hand, Schipper argues that her "dispute with the Defendants did not arise overnight." Filing No. 14 at 16. Schipper states that she filed a First Complaint on August 12, 2025, when New Horizon failed to make payments due on the Promissory Note beginning on July 30, 2025. *Id.* She had that First Complaint dismissed, without prejudice, following New Horizon's subsequent payment owed under the Promissory Note. *Id.* Schipper alleges that New Horizon then failed to make the next payment owed

under the Promissory Note a few short weeks later in August. *Id.* In response, Schipper states that she filed her Second Complaint (the initial Complaint in this case) on September 2, 2025 (*see* Filing No. 1-2 at 1), and following that filing the parties tried to negotiate a resolution to their disputes. *Id.* However, Schipper alleges that unlike the July payment, New Horizon never made the August payment owed under the Promissory Note, so the Second Complaint (this case) was never dismissed. *Id.* In sum, Schipper argues that "[t]he filing of both the First and Second Complaints were reasonable actions precipitated by the failures of Defendants to make timely payments owed to Ms. Schipper under the Promissory Note." Filing No. 14 at 17.

While there are factors here that may make this a close call, after careful consideration the Court finds that Schipper, in filing first, has neither acted in bad faith nor raced to the courthouse to preempt a suit by Defendants in Nevada. First, while Schipper's initial Complaint on September 1, 2025, was not prosecuted, this is reasonable considering the parties were actively engaged in non-litigation resolutions. It is also reasonable that Schipper thought Defendants would make payment again like they did in July, and she could have the Complaint dismissed, similar to her First Complaint. Once Schipper became aware that Defendants were not interested in a non-litigation solution, she proceeded with the litigation via her initial Complaint. Moreover, it seems both parties were on notice that either party was at least considering filing suit, based on the July payment dispute (which was eventually paid) and current August payment dispute in which the parties tried to resolve their dispute for over three months without formal litigation. Therefore, the first-filed rule applies, and Schipper's choice of forum receives deference.

Thus, the Court finds Defendants' arguments relating to the interests of justice unavailing when balanced against the "considerable deference" federal courts give "to a plaintiff's choice of forum," *In re Apple, Inc.*, 602 F.3d at 913; *Brotherhood of Maintenance of Way Employes Division/IBT*, 485 F. Supp. 3d at 1061 (saying plaintiff's choice of forum goes to the interests of justice), and the fact that "§ 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases,'" *Atlantic Marine Const. Co.*, 571 U.S. at 59–60 (majority opinion) (quoting *Stewart Organization, Inc.*, 487 U.S. at 33).

The convenience of the parties also does not favor transfer. Defendants argue that none of the parties are domiciled in or maintain a principal place of business in Nebraska. Filing No. 10 at 8. Both Defendants are domiciled in Nevada and Schipper is domiciled in South Dakota. Defendants urge the Court to consider that travel from Las Vegas to Nebraska is a significant burden for Defendants. *Id.* Defendants also urge the Court to consider that Defendants' relevant documentary evidence is located at New Horizon's principal place of business in Las Vegas. *Id.*

These arguments are unavailing because Defendants consented to the possibility of these hardships in signing the four agreements with the forum selection clauses. *Atlantic Marine Const. Co.*, 571 U.S. at 59–60 (majority opinion) ("[A] proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" (quoting *Stewart Organization, Inc.*, 487 U.S. at 33)). As discussed above, the agreements each contained a valid forum selection clause which the parties expressly agreed to as part of their negotiations. While the Court finds the clause permissive, it does not change the fact that the clause consents to jurisdiction in

Nebraska. Moreover, Schipper is the plaintiff who first filed a lawsuit in the forum selected by the parties and Plaintiff's choice of forum is given considerable deference. Additionally, while travel to Nebraska is a burden for Defendants, Nebraska is more convenient for Schipper because the distance from South Dakota to Nebraska is shorter than the distance to Nevada. Thus, transfer to Nevada would also inconvenience Schipper. Lastly, the in-person negotiations occurred in South Dakota, and the agreements were digitally signed which makes them easily transported. Defendants have not shown that the convenience of the parties favors transferring the case such that the Court should look past Defendants' consent to Nebraska and the "considerable deference [given] to a plaintiff's choice of forum." *In re Apple, Inc.*, 602 F.3d at 913; *Atlantic Marine Const. Co.*, 571 U.S. at 59–60 (majority opinion) ("[A] proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" (quoting *Stewart Organization, Inc.*, 487 U.S. at 33)).

Lastly, the convenience of the witnesses also does not obviously favor transfer. Defendants argue that all of Defendants' witnesses would be from Nevada. Filing No. 10 at 8. Similar to Defendants' convenience of the parties argument, Defendants urge the Court to consider that travel from Las Vegas to Nebraska is a significant burden for Defendants' witnesses. *Id.* Schipper, on the other hand, argues that her "[w]itnesses are located across the Missouri River from Dakota County, Nebraska, Ms. Schipper's selected forum and this court is the closest federal court to Ms. Schipper's chosen jurisdiction." Filing No. 14 at 12. Similar to the Court's discussion above regarding the convenience of the parties, travel to Nebraska may be a burden for Defendants' witnesses, but the distance from South Dakota to Nebraska is shorter than the distance

to Nevada, so transfer to Nevada would also inconvenience Schipper's witnesses. *See Terra Intern., Inc.*, 119 F.3d at 696–97 ("Merely shifting the inconvenience from one side to the other . . . is not a permissible justification for change of venue." (quoting *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992)). Therefore, Defendants have similarly failed to show that convenience to the witnesses favors transferring the case such that the Court should look beyond their consent to Nebraska and the "considerable deference [given] to a plaintiff's choice of forum." *In re Apple, Inc.*, 602 F.3d at 913; *Atlantic Marine Const. Co.*, 571 U.S. at 59–60 (majority opinion) (quoting *Stewart Organization, Inc.*, 487 U.S. at 33)).

## IV. CONCLUSION

In this case, Defendants are bound by forum selection clauses, and analysis of factors under 28 U.S.C. § 1404(a) here merely reinforces the propriety of the forum to which Defendants have previously agreed. The Court concludes transfer is not proper and denies Defendants' motion to transfer venue.

Based upon the forgoing analysis, the Court will enforce the forum selection clause and retain jurisdiction of the case in the District of Nebraska.

IT IS ORDERED:

1. Defendants' Motion to Transfer Venue, Filing No. 9, is denied.
2. Defendants shall answer or otherwise respond to Plaintiff's claims within 14 days of the date of this order.

Dated this 21st day of September, 2026.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge